# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>ROCKDALE MARCELLUS HOLDINGS, LLC, and ROCKDALE MARCELLUS, LLC,[1]<br><br>                   Debtors.<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ROCKDALE MARCELLUS HOLDINGS, LLC, and ROCKDALE MARCELLUS, LLC,<br><br>                   Movant,<br><br>  v.<br><br>NO RESPONDENT. | Case No. 21-22080-GLT<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Document No.<br><br>Related to Doc. No. 276, 397<br><br>Hearing Date: December 14, 2021<br><br>Hearing Time: 1:00 PM |

**SUPPLEMENT TO APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO SECTIONS 328(a), 330, AND 1103 OF THE BANKRUPTCY CODE, FEDERAL RULES OF BANKRUPTCY PROCEDURE 2014(a) AND 2016, AND LOCAL RULE 2016-1 FOR AUTHORIZATION TO RETAIN AND EMPLOY RIVERON RTS, LLC AS FINANCIAL ADVISOR <u>EFFECTIVE AS OF OCTOBER 7, 2021</u>**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors in possession (collectively, the "Debtors") hereby submits this Supplement to the Application previously submitted for authorization to retain and employ Riveron RTS, LLC f/k/a Conway MacKenzie, LLC ("RTS" or "Riveron") at Docket No. 276 (the "Application").[2] In support of the Supplement, the Committee submits the Second Supplemental Declaration of Gary R. Barton (the "Second Supplemental Barton Declaration"), attached hereto as **Exhibit A**, and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Rockdale Marcellus Holdings, LLC (7117); Rockdale Marcellus, LLC (8767). The Debtors' address is 4600 J. Barry Ct., Suite 220, Canonsburg, PA 15317.

[2] Terms not defined herein have the meaning ascribed to them in the Application.

Declaration of John T. Young, Jr. (the "Young Declaration"), attached hereto as **Exhibit B**, in further support of the Application.

## PRELIMINARY STATEMENT

1. The Committee files this Supplement to address the questions and concerns raised by the Court at the November 12, 2021 hearing on the Application. As the Court is aware, RTS's predecessor, Conway MacKenzie, LLC, performed financial advisory services for Rockdale Marcellus Holdings, LLC in 2020 (the "2020 Engagement").

2. Prior to selecting RTS as its proposed financial advisor, the Committee carefully considered issues relating to RTS's retention, both before RTS began work and also during the case in connection with the U.S. Trustee' informal comments and requests for revision to the Application. The Committee submits that RTS's retention as financial advisor to the Committee is necessary and in the best interests of unsecured creditors in these cases.

3. As a result of informal inquiries by the U.S. Trustee, RTS produced its 2020 Engagement Letter as well as invoices on a confidential basis to the U.S. Trustee and filed the formal information barrier agreement (the "Information Barrier Agreement") that its professionals have signed. RTS agreed to waive any pre-petition claim that it potentially had against the Debtors arising from the 2020 Engagement Letter. RTS further agreed to the Engagement Carveout (discussed below) at the request of the U.S. Trustee.

4. Further, as noted by Mr. Alaniz at the hearing, the Debtors also conducted their own diligence and inquiry, including reviewing the situation with the Board of Directors, to ensure that the Debtors' information relating to the 2020 Engagement Letter was sufficiently screened off and would be kept confidential. The Debtors interviewed the members of the Riveron 2020 Engagement team to be assured that there was a complete separation of the two teams as far as

DOCS_LA:340806.3 75205/002

personnel and an information barrier. Mr. Alaniz confirmed that Mr. Young was not involved substantively in the 2020 Engagement from the Debtors' perspective. The Debtors further directed RTS to destroy all confidential information and work product related to the 2020 Engagement Letter, which RTS promptly did to the satisfaction of the Debtors thereby obviating the need for objection.

5.     At this juncture in the case, RTS's team of professionals have spent a significant amount of time and resources to get up to speed in these cases, and if the Committee would need to select alternate financial advisors, the Committee would be greatly prejudiced. RTS is one of the leading firms in the oil and gas industry and the Debtors, the first lien lender, and the U.S. Trustee have no objection to the Committee's choice of RTS as its financial advisor.

## **SUPPLEMENT**

6.     At the initial hearing on the Application, the Court summarized its concerns as follows:

> THE COURT: Well, I think I've identified them. It's the sufficiency of the declaration as it applies to the involvement of John Young. You know, was he involved, was he not involved, and is he going to be involved in this engagement? Was the confidential information destroyed, and if so, why is there a need for an information barrier? And, you know, again, knowing a little bit more about the 2020 engagement to see if it would have any bearing on the representation that would be provided to the committee. And lastly, you know, this issue of the fact that Riveron is unable to advise the committee on all aspects of what would normally be an engagement in that, you know, it cannot

3

> provide any advice, or assistance, on anything that happened during the time period, I think it was five or six months advising the debtors in this case.

Nov. 12, 2021, Hearing Tr. at 17:21-18:10.

7. ***Role of John T. Young, Jr.*** Mr. Young spent approximately 4.9 hours related to the 2020 Engagement Letter, all of which related to administrative matters, including setting up the client internally, review of the engagement letter, and review of invoices. *See* Ex. B, Young Decl. at ¶ 8. Mr. Young did not and does not have access to confidential information from the 2020 Engagement, and was not involved in providing substantive services related to the 2020 Engagement Letter. *Id.* at ¶ 8.

8. Mr. Young is one of the Riveron team of professionals (the "UCC Team") proposed to be engaged by the Committee to advise with respect to Debtors (the "UCC Engagement"). *Id.* at ¶ 6. Mr. Young has been providing services to the Committee and the Committee's request is for Mr. Young to continue to provide services to the Committee in connection with the UCC Engagement given his deep industry knowledge. *Id.*

9. Each RTS professional that performed work pursuant to the 2020 Engagement Letter, including Mr. Young, signed the Information Barrier Agreement. *Id.* at ¶ 5. Exhibit A to the Information Barrier Agreement does not list Mr. Young as a Rockdale professional because he worked only 4.9 hours in administrative matters related to the 2020 Engagement and none of the time was spent rendering services in connection therewith; therefore, he is not considered part of the working team for the 2020 Engagement. *Id.* at ¶ 9.

4

10. ***Confidential Information Barrier***.  In response to the Court's question: "Was the confidential information destroyed, and if so, why is there a need for an information barrier?" – the answer is yes, the confidential information was destroyed.  *See* Ex. A, Second Supp. Barton Decl. ¶ 8.  It is Riveron's general policy to have an information barrier in place for all its engagements.  *Id.* at ¶ 6.  The information barrier keeps confidential information from any client in a secure location within Riveron's system that restricts access to the Riveron professionals working on the engagement and requiring access to the information.  *Id.*

11. Further, in an abundance of caution, while RTS has destroyed confidential information and already has an information barrier practice and policy for all matters, it continued its information barrier (i.e., ethical wall) so that there is no crossover of information (for example, dialogue or discussion or internal emails or communication) between people who worked on the 2020 Engagement with the UCC Engagement in the form of the Information Barrier Agreement attached as Exhibit A to the Barton Supplemental Declaration [Docket No. 357].  *Id.* at ¶ 7.  This ethical wall is purely erected as a belt and suspenders approach to further ensure that all personnel who worked on the prior engagement are not permitted to interact with people on the UCC Engagement with respect to the Debtors.  *Id.*

12. ***Scope of 2020 Engagement***.   The advisory services performed by Conway Mackenzie for the 2020 Engagement were not related to the preparation of these Chapter 11 cases.  Initial Barton Decl. ¶ 14.  At the time of the 2020 Engagement, the Debtors had a different capital structure with a different first lien lender, Citizens, and the Debtors were

5

exploring strategic alternatives for an out-of-court restructuring. The following is a summary of the specific services RTS performed under the 2020 Engagement Letter:

- Assisted the Company in evaluating its oil and gas assets to refine the existing bottoms-up cash flow forecast and prepare various alternative scenarios:
  - Reviewed reserve reports to understand field level cash flows;
  - Reviewed lease operating expenses and midstream costs;
  - Evaluated oil and gas development plans, including required capital expenditures, timing of drilling & completion of new wells, and midstream costs;
  - Prepared and evaluated capital expenditure requirements and liquidity under various oil and gas development scenarios;
  - Evaluated liquidity and capital requirements under various operating structures and development plans;
  - Analyzed projections and financial metrics under several capital structures including volumetric production payments, overriding royalty interest, and refinancing scenarios.
- Interfaced with various stakeholders related to the Company's liquidity, capital structure, oil and gas development scenarios;
- Facilitated with various stakeholders' diligence requests;
- Reviewed and updated cash flow forecasts at the request of stakeholders, required under the forbearance agreements, and to assist management in managing and forecasting liquidity.

*Id.* at ¶ 10.

13.     The above detail regarding the scope of services was provided to the UCC Engagement team by the 2020 Engagement Team in order to allow the UCC Engagement team to respond to informal inquiries by the U.S. Trustee. Further in response to the U.S. Trustee's inquiries, RTS produced the 2020 Engagement Letter and copies of all invoices related thereto on a confidential basis to the U.S. Trustee for its review.

14.     The Committee has reviewed the scope of services performed by Conway Mackenzie under the 2020 Engagement and does not believe it will have any bearing on RTS's ability to provide services to the Committee in connection with the UCC Engagement.

6

15. ***Restriction of RTS's Role Per Agreement with U.S. Trustee***. At the request of the Office of the U.S. Trustee, RTS agreed to the carveout from the scope of the UCC Engagement as set forth in the Supplemental Barton Declaration [Docket No. 357] at paragraph 9. After further discussion with the U.S. Trustee following the November 12th hearing, the U.S. Trustee has agreed to further modified language as follows: "RTS will not advise the Committee with respect to potential claims or causes of action against the Debtors, their insiders, or professionals, arising from or relating to professional services provided by RTS during the period when the Debtors employed RTS under the 2020 Engagement Letter" (the "Engagement Carveout"). *See* Second Supplemental Barton Decl. at ¶ 4.

16. The Engagement Carveout was agreed to after consultation with Committee counsel. On behalf of the Committee, both Pachulski Stang Ziehl & Jones and Whiteford Taylor Preston are investigating all potential claims and causes of action against third parties, including insiders, and the Committee does not believe that its investigation requires the retention of a financial advisor for its investigations[3] or that the Engagement Carveout will in any way impact or impair the Committee's investigation in this regard. *Id.* at ¶ 5.

17. Further, as per the Second Supplemental Barton Declaration, the time period of the 2020 Engagement was actually between September 18, 2020, and December 19, 2020, which is less than a three-month time period (as opposed to the time period set forth in the Initial Barton Declaration). *Id.* at ¶ 11. Any time incurred subsequent to December 19, 2020 was spent in transitioning the matter to the next financial advisor. *Id.*

---

[3] The Committee believes it does need a financial advisor, and specifically Riveron because it is so steeped in the oil and gas industry, to assist it with, among other things, the sale process, operational issues, and plan feasibility/valuation issues.

7

18. Further, RTS did not receive any payments from the Debtors during the 90 days prior to the petition date. The Committee is unaware of any claims that the Debtors have against RTS and the Debtors have not objected to the Application.

WHEREFORE, the Committee respectfully requests entry of an order, substantially in the form attached to the forthcoming Certification of Counsel at Exhibit A thereto, and granting such other relief as is just and proper.

Date: November 23, 2021

WHITEFORD, TAYLOR & PRESTON, LLP

*/s/ Daniel R. Schimizzi*
Daniel R. Schimizzi, Esq. (PA I.D.: 311869)
Michael J. Roeschenthaler, Esq. (PA I.D.: 87647)
200 First Avenue Third Floor
Pittsburgh, PA 15222
    Tel: (412) 275-2401
    Fax: (412) 275-2404
dschimizzi@wtplaw.com
mroeschenthaler@wtplaw.com

-AND-

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Bradford J. Sandler (PA ID No. 77463)
Robert J. Feinstein *(admitted pro hac vice)*
780 Third Avenue, 34th Floor
New York, NY 10017
t: 212-561-7700
f: 212-561-7777
bsandler@pszjlaw.com
rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors of Rockdale Marcellus Holdings, LLC, and Rockdale Marcellus, LLC*