IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| ROCKDALE MARCELLUS, LLC, and ROCKDALE MARCELLUS HOLDINGS, LLC,[1] <br><br> *Debtors,* | Chapter 11 <br><br> Case No. 21-22080-GLT (lead) <br> Case No. 21-22079-GLT <br> (Jointly Administered) |
| REGENCY MARCELLUS GAS GATHERING, LLC, and ETC AQUA, LLC, <br><br> *Movants* <br><br> v. <br><br> ROCKDALE MARCELLUS, LLC, and ROCKDALE MARCELLUS HOLDINGS, LLC, <br><br> *Respondents.* | Docket No. <br><br> Hearing Date and Time: <br><br> Response Deadline: |

**EXPEDITED MOTION OF REGENCY MARCELLUS GAS
GATHERING, LLC AND ETC AQUA, LLC TO CONVERT THE DEBTORS'
CASES FROM CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE**

Creditors Regency Marcellus Gas Gathering, LLC ("Regency") and ETC Aqua, LLC ("ETC Aqua"), by and through their undersigned counsel, hereby file this motion (the "Motion") to convert the Debtors' cases from chapter 11 to chapter 7 of the Bankruptcy Code. Regency and ETC Aqua also respectfully request that the Court hear this Motion immediately following the closing of the sale (on or about January 19, 2022). In support of their Motion, Regency and ETC Aqua state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Rockdale Marcellus Holdings, LLC (7117); and Rockdale Marcellus, LLC (8767). The Debtors' address is 4600 J. Barry Ct., Suite 220, Canonsburg, PA 15317.

{C1194179.1 }     151591281v4

## I. INTRODUCTION

The Debtors have now sold all of their assets. By January 19, 2022, the anticipated sale closing date, the Debtors will have no business to operate, no material assets, no claims or causes of action to pursue, and no purpose to remain in chapter 11. Accordingly, the immediate conversion of the Debtors' chapter 11 cases to chapter 7 of the Bankruptcy Code will best serve the interests of the Debtors' few remaining creditors.

The Debtors' Chief Restructuring Officer, John DiDonato, testified at the sale hearing that following the sale process, the estate will be wound down and the Debtor entities dissolved. Hr'g Tr. 23:12-19. The only other task that will remain is the preparation of taxes. Hr'g Tr. 23:19.

Mr. DiDonato also testified that the sale yielded $220 million in proceeds, Hr'g Tr. 18:5-6, which proceeds will be used to pay the Debtors' secured indebtedness in full (estimated $217 million), Hr'g Tr. 18:9, $12.2 million of anticipated administrative expenses, Hr'g Tr. 22:8-9, and approximately $2 million of wind-down costs Hr'g Tr. 23:12-15, leaving the general unsecured class (comprised of an estimated $32.6 million in claims) with a meager $1.95 million. Hr'g Tr. 24:15.

Upon belief, Regency and ETC Aqua are two of four remaining general unsecured creditors in these cases and collectively hold an approximate 79% of the remaining unsecured claims against the Debtors. As such, their recovery will be the most impacted by the Debtors' actions post-closing. Consequently, the Debtors and their fiduciaries must proceed in a manner that maximizes return to them and act only in their best interests. In the absence of any justification for having these cases remain in chapter 11, and in order to preserve the funds that would otherwise be expended pursuing a liquidating plan, it would be in the best interests of the

Debtors' remaining creditors to convert these cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code immediately following the closing of the sale.[2]

## II.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution.

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     BACKGROUND

### A.     General Background

3.     On September 21, 2021, each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

4.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in these cases.

5.     On October 1, 2021, the Office of the United States Trustee appointed the Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102. [Dkt. No. 156].  As of the sale closing date, the claims of all members of the Committee except ETC Aqua will have been satisfied.

### B.     The Sale

6.     On December 29, 2021, the Court held a hearing approving the sale of substantially all of the Debtors assets.  At the sale hearing, Regency and ETC Aqua did not

---

[2]     Regency and ETC Aqua conveyed their opposition to a liquidating plan to counsel for the Debtors as early as December 17, 2021, the day after the auction.

object to the sale itself, but preserved the record that their decision not to object should not be deemed a tacit approval of the need for a liquidating plan. Hr'g Tr. 39:24-40:1. Additionally, counsel for Regency and ETC Aqua previewed for the Court that conversion to a chapter 7 should be pursued following the sale process. Hr'g Tr. 40:1-7.

7.      The sale is scheduled to close by January 19, 2022.

## IV.     RELIEF REQUESTED AND BASIS FOR RELIEF

8.      By this Motion, Regency and ETC Aqua request entry of an order, pursuant to Bankruptcy Code section 1112(b), converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code immediately following the closing of the sale.

9.      Bankruptcy Code section 1112(b) provides that, on request of a party in interest, and after notice and a hearing, the "the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estate*," if the movant establishes cause. 11 U.S.C. § 1112(b)(1) (emphasis added). Under section 1112(b), conversion or dismissal is mandatory upon a finding of "cause." *See* 11 U.S.C. § 1112(b)(1) (use of the word "shall" instead of "may").

10.     Bankruptcy Code section 1112(b)(4) lists a number of grounds that constitute "cause" for conversion or dismissal. However, this list is not exhaustive, *In re Stone Fox Capital LLC*, 572 B.R. 582, 588 (Bankr. W.D. Pa. 2017), and a court may "consider other facts as they arise, and . . . use its equitable powers to reach an appropriate result in individual cases." S. Rep. 95-989, 117, 1978 U.S.C.C.A.N. 5787, 5903.

11.     Pursuant to Bankruptcy Code section 1112(b)(4)(A), cause exists to convert a case to a case under chapter 7 of the Bankruptcy Code if there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11

U.S.C. § 1112(b)(4)(A). The inquiry under section 1112(b)(4)(A) is twofold: first, a court "must look at the track record of the [d]ebtor to determine if it is suffering losses or making gains," and second, it "must determine whether rehabilitation is likely given the evidence presented at hearing." *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).

12. Cause to convert the Debtors' cases under section 1112(b)(4)(A) certainly exists here. In the context of a debtor who will have no business operations or assets following the closing of a sale of substantially all of its assets, "any negative cash flow – including that resulting from administrative expenses – effectively comes straight from the pockets of the creditors." This is enough to satisfy Bankruptcy Code section 1112(b)(4)(A)'s "continuing loss to or diminution" prong. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004). While there is no negative cash flow *yet*, there soon will be should the Debtors be permitted to commence work developing, drafting, and confirming a liquidating plan. There can be no reasonable dispute that the funds expended for the foregoing purposes will come straight out of the unsecured creditors' pockets, including those of Regency and ETC Aqua. To erode the likely miniscule recovery for purposes of preparing a disclosure statement and liquidating plan, which may or may not be confirmable, would be a waste of precious estate assets to the detriment of the unsecured creditors. In addition, because the Debtors will cease business operations having sold substantially all of their assets in the sale process shortly after the closing of the sale, no additional cash flow is expected.

13. Second, the Debtors have no prospect of rehabilitation, which courts have interpreted as a "debtor's ability to restore the viability of its business." *Id.* (citing *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990); *In re The Ledges Apartments*, 58 B.R. 84, 87

(Bankr. D. Vt. 1986); *In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985))).

As noted in Collier,

> [T]he standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

COLLIER ON BANKRUPTCY ¶ 1112.04[6][a][ii] (16th Ed. 2010).[3] Because the Debtors will cease operating their businesses and will have no material assets, they have no reasonable prospect of rehabilitation. As the First Circuit Court in *In re Gonic Realty Trust* noted, "with no business left to reorganize, chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business." 909 F.2d at 627. The fact that the Debtors have no viable business to restore, and thus cannot be rehabilitated, is not in dispute. On this basis, allowing the cases to remain in chapter 11 will serve no purpose; rather, it would lead to the erosion of the little that is left of the sale proceeds for the general unsecured class. The Debtors' pursuit of a liquidating plan, wasting estate assets by incurring additional administrative expenses, professional fees, and other charges, that will not benefit the unsecured creditors.

14. As noted above, Regency, ETC Aqua, and two other unsecured creditors comprise nearly 100% (in amount) of the general unsecured claims class, the only class that will remain with claims against the Debtors' estates and the only class the Debtors and their fiduciaries should be maximizing value for at this juncture. Per the Debtors' own estimates, Regency and

---

[3] As noted, the standard is not whether a debtor can confirm a plan. But even if that were the standard, whether the Debtors here would be able to confirm a liquidating plan is questionable considering that Regency and ETC Aqua, as holders of nearly 79% (in amount) of the remaining claims against the Debtors, oppose not only the expenditure of fees in preparing the liquidating plan, but also the plan itself. Under these facts, Regency and ETC Aqua do not believe that the Debtors would be able to confirm a plan.

ETC Aqua alone hold approximately $25.7 million (or nearly 79%) of the entire general unsecured claims pool, which is estimated to total approximately $32.6 million.[4] Hr'g Tr. 25:4-5. As the only class that is affected by the Debtors' actions post-closing, Regency and ETC Aqua urge the Debtors to cease incurring additional fees and expending any further funds developing, drafting and pursuing a liquidating plan. In order to preserve these funds for the benefit of the unsecured creditors, the Debtors' cases should be converted to cases under chapter 7 of the Bankruptcy Code immediately following the closing of the sale.

## V.    REQUEST FOR EXPEDITED RELIEF

15. In accordance with Local Rule 9013-2, Regency and ETC Aqua respectfully submit that just cause exists to hear this Motion on an expedited basis immediately following the closing of the sale (on or about January 19, 2022), and such relief is appropriate to preserve the value of the Debtors' estates for the benefit of the unsecured creditors. The estates and the unsecured creditors will suffer harm and economic disadvantage if the Motion is not heard on an expedited basis because, without immediate relief, administrative expenses and professional fees will continue to accrue while the Debtors pursue the drafting and confirmation of an unnecessary liquidating plan.

16. The need for an expedited hearing has not been caused by any lack of due diligence on the part of Regency, ETC Aqua, or their counsel, and has been brought about solely by circumstances beyond their control.

## VI.    RESERVATION OF RIGHTS

17. Regency and ETC Aqua are continuing to evaluate whether a structured dismissal may be beneficial to and in the best interests of the Debtors' remaining unsecured creditors. As

---

[4] Regency believes its claim is materially higher than estimated by the Debtors.

such, Regency and ETC Aqua expressly reserve all rights to amend or supplement this Motion to seek a structured dismissal of the Debtors' cases.

18.  Nothing in this Motion should be construed to adversely affect any of Regency or ETC Aqua's rights, claims, or causes of action against the Debtors under any of the Regency Agreement, the Bankruptcy Code, or any other applicable law.

WHEREFORE, Regency and ETC Aqua respectfully request that the Court convert these cases to cases under chapter 7 of the Bankruptcy Code, and grant Regency and ETC Aqua such other and further relief as it may deem just and proper.

*Remainder of page intentionally left blank*

Dated: January 10, 2022

Respectfully submitted,

**CAMPBELL & LEVINE, LLC**

*s/Kathryn L. Harrison*
Paul J. Cordaro, Esquire
PA I.D. No. 85828
Kathryn L. Harrison, Esq.
PA I.D. No. 209601
310 Grant St., Suite 1700
Pittsburgh, PA 15219
Telephone: (412) 261-0310
Facsimile: (412) 261-5066
Email: pjc@camlev.com
Email: kharrison@camlev.com

**KATTEN MUCHIN ROSENMAN LLP**

John E. Mitchell
Michaela Crocker
Yelena Archiyan
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone: (214) 765-3600
Facsimile: (214) 765-3602
Email: john.mitchell@katten.com
Email: michaela.crocker@katten.com
Email: yelena.archiyan@katten.com

**COUNSEL FOR REGENCY MARCELLUS GAS GATHERING, LLC AND ETC AQUA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2022, I caused a true and correct copy of the foregoing document to be served by the Court's Electronic Case Filing (ECF) System for the Unites States Bankruptcy Court for the Western District of Pennsylvania.

*/s/ Kathryn L. Harrison*
Kathryn L. Harrison