# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>ROCKDALE MARCELLUS HOLDINGS, LLC and ROCKDALE MARCELLUS, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-22080-GLT<br><br>(Jointly Administered) |
| ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS PLAN ADMINISTRATOR FOR ROCKDALE MARCELLUS HOLDINGS, LLC and ROCKDALE MARCELLUS, LLC,<br><br>Movant,<br><br>v.<br><br>PENNSYLVANIA PUBLIC UTILITY COMMISSION,<br><br>Respondent. | Document No.:<br><br>Related to Doc. No.:<br><br>Hearing Date: July 21, 2022<br><br>Hearing Time: 3:30 PM (EST)<br><br>Response Deadline: July 14, 2022 at 4:00 PM (EST) |

## PLAN ADMINISTRATOR'S OBJECTION TO
## INFORMAL CLAIM OF PENNSYLVANIA PUBLIC UTILITY COMMISSION

Alfred T. Giuliano (the "Plan Administrator"), solely in his capacity as Plan Administrator of the debtors (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), submits this objection (this "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order substantially in the form attached as **Exhibit A** (the "Order") disallowing and expunging the informal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Rockdale Marcellus Holdings, LLC (7117); and Rockdale Marcellus, LLC (8767).

- 1 -

administrative claim (the "Claim") asserted by the Pennsylvania Public Utility Commission ("Claimant") because the Claim is not entitled to administrative priority, and at best could be deemed to be a general unsecured claim; however, the Claimant never filed a proof of claim, thereby warranting disallowance.  In support of this Objection, the Plan Administrator relies upon the *Declaration of Alfred T. Giuliano In Support of Objection* (the "Plan Administrator Declaration"), attached as **Exhibit B**, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is section 502 of the Bankruptcy Code.  Such relief is warranted under Bankruptcy Rules 3007 and 9014.

## BACKGROUND

3.      On September 21, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition (each, a "Petition") for relief under chapter 11 of the Bankruptcy Code in the Court.

4.      On April 14, 2022, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Combined Disclosure Statement and Plan of Liquidation of Rockdale Marcellus Holdings, LLC and Rockdale Marcellus, LLC Under Chapter 11 of the Bankruptcy Code on a Final Basis, and (II) Confirming the Second Amended Combined Disclosure Statement and Plan of Liquidation of Rockdale Marcellus Holdings, LLC and Rockdale Marcellus, LLC Under Chapter 11 of the Bankruptcy Code* [Doc. No. 1070] (the "Confirmation

Order") confirming the *Second Amended Combined Disclosure Statement and Plan of Liquidation of Rockdale Marcellus Holdings, LLC and Rockdale Marcellus, LLC Under Chapter 11 of the Bankruptcy Code* [Doc. No. 920] (the "Plan"). The Plan became effective by its terms on April 29, 2022 [Doc. No. 1122] (the "Effective Date").

5. Upon the Effective Date, the Plan Administrator was appointed to serve as the Debtors' representative in accordance with section 1123 of the Bankruptcy Code, and has all powers, authority, and responsibilities specified in the Plan, including, without limitation, the authority to object to claims. *See* Plan § 14.1.

### The Bar Dates

6. On November 9, 2021, the Court entered an order [Doc. No. 375] (the "Bar Date Order") establishing, *inter alia*, December 13, 2021 as the General Bar Date in these cases (including claims arising under section 503(b)(9) of the Bankruptcy Code). As set forth therein, all governmental units that sought to assert a claim against the Debtors that arose prior to the Petition Date were required to file proofs of claims by March 21, 2022 (the "Governmental Bar Date").

7. The Bar Date Order specifically provides that:

> Any person or entity that is required to file a timely proof of claim or interest in the form and matter specified in this order and that fails to do so ono or before the applicable Filing Deadline shall not receive or be entitled to receive any payment or distribution of property from the Debtors, their estates, or their successors or assigns with respect to such claim or interest, and shall be forever barred from asserting such claim or interest against the Debtors, their estates, or their successors or assigns.

- 3 -

*See* Bar Date Order, ¶ 11.

8.  On November 12, 2021, Epiq served the Bar Date Notice (as defined in the Bar Date Order) on all required parties, including the Claimant, in accordance with the procedures outlined in the Bar Date Order. *See* Docket No. 402. Claimant received notice of the General Bar Date and the Governmental Bar Date. *Id.* at 20. The Debtors also published the Bar Date Notice in: *The New York Times National Edition* on November 15, 2021; the *Houston Chronicle*, *The Patriot-News*, and *The Philadelphia Inquirer* on November 16, 2021; and the *Pittsburgh Post-Gazette* on November 18, 2021. *See* Doc. No. 429.

9.  The Bar Date Notice specifically provides that:

> ANY ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM AGAINST THE DEBTORS BUT THAT FAILS TO DO SO BY THE APPLICABLE FILING DEADLINE DESCRIBED IN THIS NOTICE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM THE FOLLOWING: (A) ASSERTING ANY SUCH CLAIM AGAINST THE DEBTORS OR THEIR ESTATES OR PROPERTY THAT (I) IS IN AN AMOUNT THAT EXCEEDS THE AMOUNT, IF ANY, THAT IS IDENTIFIED IN THE SCHEDULES ON BEHALF OF SUCH ENTITY AS UNDISPUTED, NONCONTINGENT, AND LIQUIDATED OR (II) IS OF A DIFFERENT NATURE OR CLASSIFICATION THAN ANY SUCH CLAIM IDENTIFIED IN THE SCHEDULES ON BEHALF OF SUCH ENTITY (ANY SUCH CLAIM IN THIS SUBPARAGRAPH (A) BEING REFERRED TO IN THIS NOTICE AS AN "UNSCHEDULED CLAIM"); OR (B) VOTING UPON, OR RECEIVING DISTRIBUTIONS UNDER, ANY CHAPTER 11 PLAN IN THESE CHAPTER 11 CASES IN RESPECT OF AN UNSCHEDULED CLAIM.

10. Pursuant to that *Order (I) Establishing Administrative Claims Bar Date, (II) Approving Form, Manner, and Sufficiency of Notice Thereof, (III) Approving Proof of Administrative Claim Form, and (IV) Granting Related Relief* [Doc. No. 741], the Court established January 31, 2022 as the deadline for claimants to file administrative expense claims arising from the Petition Date through January 31, 2022 (the "Initial Administrative Expense Claims Bar Date").

11. The final administrative claims bar date was set by the Confirmation Order and Plan. *See* Confirmation Order ¶ 29. Holders of administrative claims that arose between the Initial Administrative Expense Claims Bar Date and the Effective Date were required to file their administrative expense claims within the first business day that is thirty days after the Effective Date, or May 31, 2022 (the "Final Administrative Expense Claims Bar Date"). *Id.*

12. Claimant was served with notices of both the Initial Administrative Expense Claims Bar Date and the Final Administrative Expense Claims Bar Date (which was set forth in the notice advising creditors of the occurrence of the Effective Date). *See* Docket No. 769 at 28; Docket No. 1124 at 18.

13. Claimant has not filed a proof of claim by any of the bar dates below (collectively, the "Bar Dates") in these cases despite having received notice of the Bar Dates at every turn.

| Bar Date | Deadline to File Claims | Notice Provided to Claimant? | Claim Filed by Claimant? |
| --- | --- | --- | --- |
| General Bar Date | December 13, 2021 | Yes | No |
| Initial Administrative Expense Claims Bar Date | January 31, 2022 | Yes | No |
| Governmental Bar Date | March 21, 2022 | Yes | No |
| Final Administrative Expense Claims Bar Date | May 31, 2022 | Yes | No |

14. By operation of the Confirmation Order, the Plan further contains a permanent injunction that bars any Holders of Claims from asserting or pursuing recovery on account of their claims that were required to be filed by the applicable Bar Dates, but were not so timely filed.

> **Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released or are subject to exculpation are permanently**

> **enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

*See* Plan § 16.5; Confirmation Order ¶ 29.

### The Informal Claim

15. In or around February 2022, Claimant issued the invoices attached hereto as **Exhibit C** to the Debtors for an impact fee of $1,428,100 and a spud fee of $3,600 for an aggregate Claim of $1,431,700. As evident from the face of the invoices, the impact fee and spud fee arise from the reporting year January 1, 2021 through December 31, 2021.

16. Upon discussions with Claimant by Debtors' professionals, Claimant has indicated its intent to continue collection of the Claim and has acknowledged that it has not filed a claim in these cases. Claimant asserts that the Claim is an administrative expense claim and that therefore, Claimant was not required to file a claim by any of the Bar Dates.

### RELIEF REQUESTED

17. By this Objection, the Plan Administrator seeks entry of the Order, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rules 3007 and 9014, disallowing and expunging the Claim.

**BASIS FOR REQUESTED RELIEF**

18. Section 502 of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Section 502(b) further provides a number of grounds on which a claim may be disallowed, including where "such claim is unenforceable against the debtor and property of the debtor, under any agreement of applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

19. As discussed below, the Claim is at best, a general unsecured claim that arose prior to the Petition Date. Accordingly, the Claimant was required to file proof of its claim by the Governmental Bar Date (*i.e.,* March 21, 2022). Claimant failed to do so. As a result, the Claim is invalid and should be disallowed in its entirety.

20. Under Pennsylvania law, Chapter 23 of the Oil and Gas Act ("Act 13"), counties in Pennsylvania can impose a fee on unconventional gas wells spud within the county (an "Impact Fee"). *See generally* 58 Pa.C.S. §§ 2301-2318. "The impact fees for all unconventional wells are imposed on an annual flat, per-well basis, and calculated using the average annual price of natural gas during the calendar year in which the fee is assessed." *Snyder Bros. v. Pa. PUC*, 198 A.3d 1056, 1059 (Pa. 2018) (footnote omitted; citing 58 Pa.C.S. § 2302(b)).

**A.  Any 2021 Impact Fee Claim Is Not a Tax-Related Administrative Expense or a Priority Tax Claim.**

21. Section 507(a)(2) of the Bankruptcy Code grants second priority to administrative expenses allowed under section 503(b) of the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(2). Section 503(b) provides for the allowance of administrative expenses for, among other

things, (i) "any tax incurred[2] by the estate" except for taxes specified in section 507(a)(8) of the Bankruptcy Code, and (ii) any fines or penalties relating to the foregoing (any such claim, a "<u>Tax Administrative Claim</u>"). *See id.* § 503(b)(1)(B), (C).[3] "An eighth priority is granted under section 507(a)(8) to allowed unsecured claims of a governmental unit for certain kinds of prepetition taxes." COLLIER ON BANKRUPTCY ¶ 507.11 (16th 2022).

22. Specifically, under section 507(a)(8), unsecured claims of governmental units are entitled to priority to the extent such claims are for (a) a tax on or measured by income or gross receipts, (b) a property tax, (c) "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity," (d) an employment tax, (e) an excise tax, (f) a customs duty, or (g) a penalty related to any of the foregoing (any such claim, a "<u>Priority Tax Claim</u>"). *See* 11 U.S.C. § 507(a)(8).

23. Based on the plain meaning of Tax Administrative Claim and Priority Tax Claim as used in the Bankruptcy Code, it is a requirement that each be based on a tax. The Supreme Court of Pennsylvania, however, has determined that an Impact Fee is <u>not</u> a tax:

> Although Appellees argue that the impact fee provisions of Act 13 are a tax, and, thus, should be strictly construed in their favor pursuant to Section 1928(3) of the SCA, we disagree. First, the General Assembly deliberately avoided labeling the impact fee as a tax, and, indeed, imposed this fee in lieu of a severance tax, which opponents of the legislation had advocated for, and, during the floor debate prior to final passage of Act 13, specifically decried the omission therefrom. *See, e.g.,* House Legislative Journal 164-168, 192-93, 196, 199 (February 8, 2012). Further counseling against treatment of Chapter 23's impact fee provisions as a tax is the fact that Chapter 23 contains a sunset provision which states that "upon the imposition of a severance tax on unconventional gas wells in this Commonwealth" the Secretary of the Commonwealth shall publish notice

---

[2] Tax liabilities are "generally incurred on the date it accrues, not on the date of the assessment or date on which it is payable." *Columbia Gas Transmission Corp.*, 37 F.3d 982, 985 (3d Cir. 1994).

[3] Under the Plan and the Confirmation Order, governmental units are not required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed. *See* Plan § 8.2; Confirmation Order ¶ 29.

- 8 -

> of the imposition of such a tax in the Pennsylvania Bulletin; whereupon, all of the impact fee provisions contained in Chapter 23 expire. 58 Pa.C.S. § 2318. No such notice has, to date, been published.

*Snyder Bros. v. Pa. PUC*, 198 A.3d 1056, 1073 n.20 (Pa. 2018). *See also* 43 Pa. Bull. 115 (Jan. 5, 2013 "Clarification Order Regarding Chapter 23 [Act 13]"; copy attached hereto as **Exhibit D**; "the purpose of an impact fee … is to provide compensation to address the impacts created by drilling"). Accordingly, the Claim, which asserts an Impact Fee, is <u>not</u> a tax, and as such, the Claim is not a Tax Administrative Claim or a Priority Tax Claim under the Bankruptcy Code, but rather is a simple general unsecured claim. Because the Claimant did not timely file a proof of claim for the Impact Fee, it must be disallowed in its entirety.

**B.      The Claim Arose Prepetition On January 1, 2021.**

24.    Under Third Circuit and applicable state law, the Claim arose on January 1, 2021 -- prepetition, thus categorically precluding the Claim from constituting an administrative expense claim. That is the date when Claimant's right to payment arose, even if the right to such payment was not liquidated and set forth in a billing until 2022. Under the Bankruptcy Code, "claim" means the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The definition of claim "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010) (citing H.R. Rep. No. 95-595, at 309 (1977)). As a result, "[a]ntecedent debt owed by the debtor occurs when a right to payment arises -- even if the claim is not fixed, liquidated, or matured." *United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)*, 180 F.3d 504, 511 (3d Cir. 1999).

25. "Courts have generally held that a debt is incurred when a debtor becomes legally obligated to pay. The legal obligation to pay arises when a particular service is performed or when goods are received by the debtor. The date of the invoice is not relevant in determining the date a debt is incurred." *In re Kahn & Assoc., Inc.*, 135 B.R. 251, 253 (Bankr. W.D. Pa. 1991) (internal citations omitted). The invoice is not relevant because the "invoice itself does not create a legal obligation to pay. Claims create an obligation to pay, and claims arise when services are performed or goods are transferred, or when parties intend for a debt to be due." *Pirinate Consulting Grp., LLC v. Md. Dep't of the Env't (In re Newpage Corp.)*, 555 B.R. 444, 450-51 (Bankr. D. Del. 2016) (*citing In re First Jersey Securities, Inc.*, 180 F.3d 504, 511 (3d Cir. 1999)) (internal citations omitted); *see also DOTS, LLC v. Capstone Media (In re DOTS, LLC)*, 533 B.R. 432, 438 (Bankr. D.N.J. 2015) ("[T]he debt arises when the debtor receives the goods or services and is then legally bound to pay, not when the creditor chooses to invoice the debtor for the work or services.") (citations omitted); *United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)*, 180 F.3d 504, 511 (3d Cir. 1999) ("The right to payment generally arises when the debtor obtains the goods or services . . . [L]egal claims arise when the legal services are performed, not when the bill itself is presented to the client."). In short, the relevant inquiry is when the Debtors became legally obligated to pay any claim for the Impact Fee for 2021.

26. The Claim arose on **January 1, 2021**, as a matter of Pennsylvania state law. Under the structure of the fee schedule in Act 13, subject to certain conditions, the Debtors pay the Impact Fee for each year after the well is spud. The obligation to pay the Impact Fee for a given year, including the obligation to continue to pay an Impact Fee for a previously spud well, arises on (i) in the case of a well to be spud later, the January 1st of the year in which the well is spud and (ii) with respect to a well spud in a prior year, the January 1st of that prior year and each

subsequent covered year.  Importantly, in clarifying certain aspects of Act 13, Claimant has stated: "For a horizontal unconventional gas well, the impact fee accrues upon spudding or at *the beginning of a calendar year for wells spud previously*." *See* 43 Pa. Bull. 115 (Jan. 5, 2013) (emphasis added; copy attached hereto as **Exhibit D**).

27. The Claim is for horizontal wells that had been spud prior to 2021. *See* **Exhibit C** (invoices from Claimant). Thus, Claimant's clear admission that, with respect to previously spud horizontal wells, the Impact Fee accrues "at the beginning of [the] calendar year for wells spud previously," disposes of this matter. Under applicable state law, the Claim for the 2021 Impact Fee arose on January 1, 2021 -- prepetition, thus categorically precluding the Claim from constituting an administrative expense claim.  It is irrelevant that the amount of the 2021 Impact Fee is not determined until 2022 (because the annual price of gas for 2021 cannot be determined until 2022). *See, e.g., Upper Peninsula Power Co. v. Verso Corp. (In re Verso Corp.)*, C.A. No. 17-577-MN, 2019 U.S. Dist. LEXIS 125420, at *13 (D. Del. July 29, 2019) ("When the SSR Cost Reallocation took place, Debtors were obligated to pay UPPCO, even if Debtors' precise share of the SSR Cost Reallocation was not known at the time.").

**D.     The 2021 Impact Fee Is Not An Administrative Expense Claim.**

28. Section 507(a)(2) of the Bankruptcy Code grants second priority to administrative expenses allowed under section 503(b). *See* 11 U.S.C. § 507(a)(2). Section 503(b) provides for the allowance of administrative expenses for, among other things, "the actual, necessary costs and expenses of preserving the estate." *See id*. § 503(b)(1)(A).  "A party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets."

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d. Cir. 1999).

29. The 2021 Impact Fee is not an administrative claim. "Generally, courts apply a two-part test in determining whether a claimant is entitled to the payment of administrative expenses: (1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Garden Ridge Corp.*, 323 B.R. 136, 142 (Bankr. D. Del. 2005). As explained above, the 2021 Impact Fee accrued on January 1, 2021 – prior to the bankruptcy filing. Thus, the 2021 Impact Fee does not satisfy element (1) above, and necessarily cannot constitute an administrative claim. *See also* 4 COLLIER ON BANKRUPTCY ¶ 503.06 (16th 2022) ("for a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a postpetition transaction; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition.").

30. Further, granting the 2021 Impact Fee priority status as an administrative claim would not further the policy underlying section 503(b)(1)(A): "allowing administrative expense priority under section 503(b)(1) is important to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor." 4 COLLIER ON BANKRUPTCY ¶ 503.06 (16th 2022). The 2021 Impact Fee is a prepetition-accrued claim relating to wells that were spud even prior to 2021, which fee was designed to provide offsetting compensation to Pennsylvania counties for impacts that had been caused by the drilling of those wells. Granting the 2021 Impact Fee administrative priority would not encourage beneficial business transactions between the Debtors and the counties; the Impact Fee is simply a charge assessed against and collected from the Debtors in relation to prior-spud wells.

**E.     The Claim Was Subject to the Governmental Bar Date; Having Failed to File a Proof of Claim or Administrative Claim at All, Claimant is Barred from Asserting the Claim.**

31.     As discussed above, the Claim for the 2021 Impact Fee is, at most, a prepetition, general unsecured, non-tax claim and is <u>not</u> a Tax Administrative Expense Claim, a Priority Tax Claim, or an Administrative Claim.  In the Debtor's Schedules, Claimant was scheduled as a creditor with a contingent, unliquidated, and disputed claim on the basis of the "impact fee."  *See* Docket No. 497.  Claimant was required to file a proof of claim to preserve its right to payment.  *See* Fed. R. Bankr. P. 3003 ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."); Bar Date Order ¶ 3 (governmental units asserting a claim against debtor that arose prior to the Petition Date were required to file a proof of claim by the Governmental Bar Date).  Having failed to timely file the Claim, Claimant "shall not receive or be entitled to receive any payment or distribution or property from the Debtors, their estates, or their successors or assigns with respect to such claim or interest, and shall be forever barred from asserting such claim or interest against the Debtors, their estates, or their successors or assigns."  Bar Date Order ¶ 11.  The Claim files on all bases, whether as a putative administrative, priority, or general unsecured claim, and should be disallowed.

## **RESERVATION OF RIGHTS**

32.     This Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Plan Administrator, the Debtors, or any other party in interest to object to any claim on any additional grounds whatsoever, and the Plan Administrator expressly

reserves all further substantive or procedural objections he may have. Nothing contained herein or any action taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of any party's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; or (e) a waiver of the Plan Administrator's rights under the Bankruptcy Code or any other applicable law.

## **NOTICE**

33. Notice of this Motion has been provided to the Claimant and parties that have filed a request for notice. The Plan Administrator submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

34. No previous request for the relief sought herein has been made to this Court or any other court.

[*The remainder of this page is intentionally left blank.*]

WHEREFORE, the Plan Administrator respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated:  June 13, 2022

Respectfully submitted,

WHITEFORD, TAYLOR & PRESTON, LLP

By: */s/ Daniel R. Schimizzi*
Daniel R. Schimizzi, Esq. (PA I.D.: 311869)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Tel: (412) 275-2401
Fax: (412) 275-2404
dschimizzi@wtplaw.com

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (PA ID No. 77463)
780 Third Avenue, 34th Floor
New York, NY 10017
t: 212-561-7700
f: 212-561-7777
bsandler@pszjlaw.com

*Counsel to Alfred T. Giuliano, Plan Administrator for Rockdale Marcellus Holdings, LLC, and Rockdale Marcellus, LLC*